# 24-559-cv

## United States Court of Appeals

*for the*

## Second Circuit

———————————————

MICROBOT MEDICAL, INC.,

*Plaintiff-Counter-Defendant-Appellee,*

— v. —

JOSEPH MONA,

*Defendant-Counter-Claimant-Appellant,*

ALLIANCE INVESTMENT MANAGEMENT, LTD.,

*Defendant.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENEDANT-COUNTER-CLAIMANT-APPELLANT

NICOLAS MORGAN
(*pro hac vice* pending)
INVESTOR CHOICE ADVOCATES
NETWORK
453 S. Spring Street, Suite 400
Los Angeles, California 90013
(310) 849-0384

AARON T. MORRIS
ANDREW W. ROBERTSON
MORRIS KANDINOV LLP
*Attorneys for Defendant-Counter-Claimant-Appellant*
305 Broadway, 7th Floor
New York, New York 10007
(212) 431-7473

*Attorneys for Defendant-Counter-Claimant-Appellant*

 COUNSEL PRESS   (800) 4-APPEAL • (513769)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ iii

INTRODUCTION ......................................................................... 1

JURISDICTIONAL STATEMENT ............................................... 3

    A.    District Court's Subject-Matter Jurisdiction .............................. 3

    B.    Court of Appeals' Jurisdiction ................................................. 3

    C.    Timeliness of the Appeal. ....................................................... 4

ISSUES PRESENTED FOR REVIEW ......................................... 4

STATEMENT OF THE CASE ...................................................... 5

    A.    Summary of the Case ............................................................. 5

    B.    Microbot Commences This Action .......................................... 6

    C.    The Statutory Purpose of Section 16(b) ................................... 8

    D.    Microbot Seeks Disgorgement of Mona's "Short-Swing Profits" .......................................................................... 10

    E.    Mona Denies Liability to Microbot and Charges Securities Fraud ............................................................... 11

    F.    The District Court Enters Judgment in Microbot's Favor Under Section 16(b) ................................................ 11

    G.    Mona Challenges the District Court's Subject-Matter Jurisdiction .......................................................... 12

    H.    The District Court Dismisses Mona's Counterclaim .............. 13

    I.    The District Court Denies Mona's Motion to Vacate the Underlying Judgment and Dismiss Microbot's Claims for Lack of Subject-Matter Jurisdiction ................................. 13

STANDARD OF REVIEW .......................................................... 15

i

SUMMARY OF ARGUMENT ................................................................. 17

ARGUMENT .......................................................................................... 20

I.      The District Court's Denial of Mona's Motion to Vacate the
        Underlying Judgment and Dismiss Microbot's Claims Against Him
        Was Based on Deficient Article III Standing ..................................... 20

II.     Microbot Lacks Article III Standing Because It Has Not
        Demonstrated an Injury-in-Fact as a Matter of Law .......................... 24

        A.      Microbot Has Neither Alleged Nor Suffered Concrete Harm,
                Which Is a Prerequisite to an Injury-in-Fact for Article III
                Standing ................................................................................... 26

        B.      Article III Standing to Maintain an Action for Disgorgement
                Under Section 16(b) Requires Pecuniary Harm Suffered by the
                Issuing Corporation or Its Investors, Which Is Lacking Here.  35

        C.      The Analogy to Common Law Breach of Fiduciary Duty and
                Constructive Trust, Which the District Court Invoked to Hold
                Mona Strictly Liable Under Section 16(b), Is Inapplicable to
                Microbot's Claims .................................................................... 38

CONCLUSION ....................................................................................... 43

# TABLE OF AUTHORITIES

## CASES

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
  57 F.4th 85 (2d Cir. 2023) ................................................................. 16

*All. for Env't Renewal, Inc. v. Pyramid Crossgates*,
  436 F.3d 82 (2d Cir. 2006) ................................................................ 21

*Allen v. Wright*,
  468 U.S. 737 (1984)............................................................................ 21

*Birdsall v. Coolidge*,
  93 U.S. 64 (1876)................................................................................ 32

*Blau v. Rayette-Faberge, Inc.*,
  389 F.2d 469 (2d Cir. 1968) .............................................................. 33

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*,
  373 F.3d 296 (2d Cir. 2004) .............................................................. 17

*Burda Media, Inc. v. Viertel*,
  417 F.3d 292 (2d Cir. 2005) ........................................................ 15, 16

*Byrnes v. Faulkner, Dawkins & Sullivan*,
  550 F.2d 1303 (2d Cir. 1977) ............................................................ 32

*Central Vt. Pub. Serv. Corp. v. Herbert*,
  341 F.3d 186 (2d Cir. 2003) .............................................................. 16

*Clinton Nurseries, Inc. v. Harrington*,
  998 F.3d 56 (2d Cir. 2021). ............................................................... 23

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*,
  790 F.3d 411 (2d Cir. 2015) .............................................................. 24

*Crist v. Comm'n on Presidential Debates*,
  262 F.3d 193 (2d Cir. 2001) .............................................................. 20

iii

*Crupar-Weinmann v. Paris Baguette Am., Inc.*,
   861 F.3d 76 (2d Cir. 2017) ........................................................... 29

*Ctr. for Reprod. Law & Policy v. Bush*,
   304 F.3d 183 (2d Cir. 2002) ......................................................... 23

*Da Silva v. Kinsho Int'l Corp.*,
   229 F.3d 358 (2d Cir. 2000) .................................................... 4, 25

*Doe v. Chao*,
   540 U.S. 614 (2004) ...................................................................... 33

*Donoghue v. Bulldog Investors General Partnership*,
   696 F.3d 170 (2d Cir. 2012) ............................................... *passim*

*Donoghue and Rubenstein v. Antara Capital Master Fund LP*,
   23-cv-4985 (S.D.N.Y. filed June 13, 2023) .................................... 7

*Donoghue and Rubenstein v. Gundmogula*,
   23-cv-9283 (S.D.N.Y. filed Oct. 20, 2023) .................................... 7

*Donoghue and Rubenstein v. Oaktree Specialty Lending Corp.*,
   21-cv-4770 (S.D.N.Y. filed May 27, 2021) .................................... 7

*Donoghue and Rubenstein v. Tango Therapeutics, Inc.*,
   23-cv-10860 (S.D.N.Y. filed Dec. 14, 2023) ................................. 7

*FAA v. Cooper*,
   566 U.S. 284 (2012) ................................................................. 31, 33

*FDA v. All. for Hippocratic Med.*,
   No. 20-235 (U.S. June 13, 2024) ..................................... 21, 23, 27

*Foremost-McKesson, Inc. v. Provident Sec. Co.*,
   423 U.S. 232 (1976) ........................................................................ 8

*Forte Biosciences, Inc. v. Camac Fund, LP*,
   No. 3:23-CV-2399-N (N.D. Tex. June 11, 2024) ........................ 43

*Frankel v. Slotkin*,
   984 F.2d 1328 (2d Cir. 1993) ......................................................... 9

iv

*Gen. Am. Invs. Co. v. Comm'r*,
  211 F.2d 522 (2d Cir. 1954) ........................................................ 34

*Globus v. Law Research Serv., Inc.*,
  418 F.2d 1276 (2d Cir. 1969).  ................................................... 32

*Grace v. Bank Leumi Tr. Co. of New York*,
  443 F.3d 180 (2d Cir. 2006) ...................................................... 15

*Gwozdzinsky v. Zell/Chilmark Fund, L.P.*,
  156 F.3d (2d Cir. 1998) .............................................................. 9

*Harty v. West Point Realty, Inc.*,
  28 F.4th 435 (2d Cir. 2022) ............................................... 23, 42

*Herpich v. Wallace*,
  430 F.2d 792 (5th Cir. 1970) ..................................................... 31

*In re Myovant Sciences Ltd. Section 16(b) Litig.*,
  20-cv-1807 (S.D.N.Y. filed Feb. 29, 2020) .................................7

*Jalapeno Prop. Mgmt., LLC v. Dukas*,
  265 F.3d 506 (6th Cir. 2001) ..................................................... 16

*Jenkins v. United States*,
  386 F.3d 415 (2d Cir. 2004). .............................................. 22, 24

*Kaplan v. Bank Saderat PLC*,
  77 F.4th 110 (2d Cir. 2023) ...................................................... 15

*Kokesh v. SEC*,
  137 S. Ct. 1635 (2017 ............................................................... 34

*Lebron v. Nat'l R.R. Passenger Corp. (Amtrak)*,
  69 F.3d 650 (2d Cir. 1995) ........................................................ 22

*Liu v. SEC*,
  140 S. Ct. 1936 (2020) ................................................. 19, 36, 37

v

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................... 23, 27

*Maddox v. Bank of New York Mellon Trust Co., N.A.*,
  19 F.4th 58 (2d Cir. 2021) ...................................................... 41, 42

*McMorris v. Carlos Lopez & Assocs., LLC*,
  995 F.3d 295 (2d Cir. 2021) ......................................................... 25

*Mills v. Electric Auto-Lite Co.*,
  396 U.S. 375 (1970) ...................................................................... 32

*Mitchell v. Maurer*,
  293 U.S. 237 (1934) ...................................................................... 16

*Newmark v. RKO Gen., Inc.*,
  425 F.2d 348 (2d Cir. 1970) ............................................................ 9

*Osofsky v. Zipf*,
  645 F.2d 107 (2d Cir. 1981). ......................................................... 31

*Packer on behalf of 1-800 Flowers.com, Inc. v. Raging Cap. Mgmt., LLC*,
  No. 15-CV-05933 (JMW) (E.D.N.Y. Mar. 13, 2023),
  *rev'd,* No. 23-367-cv (2d Cir. June 24, 2024) ............................... 13, 17, 18

*Portnoy v. Gold Reserve Corp.*,
  711 F. Supp. 565 (E.D. Wash. 1989) ............................................... 7

*Raines v. Byrd*,
  521 U.S. 811 (1997) ...................................................................... 29

*Root v. Ry. Co.*,
  105 U.S. 189 (1882) ...................................................................... 36

*Rubenstein v. Ishizuka*,
  23-cv-4332 (S.D.N.Y. filed May 24, 2023) ....................................... 7

*Ryan v. Foster & Marshall, Inc.*,
  556 F.2d 460 (9th Cir. 1977). ......................................................... 31

vi

*Rubenstein v. KnightSwift Transp. Holdings Inc.*,
    19-cv-7802 (S.D.N.Y. filed Aug. 20, 2019) ..................................................7

*Rubenstein v. Simplicity Esports & Gaming Co.*,
    21-cv-191 (S.D.N.Y. filed Jan. 9, 2021).....................................................7

*Rubenstein v. Siokas*,
    19-cv-6976 (S.D.N.Y. filed July 25, 2019)..................................................7

*Rubenstein v. Travelzoo Inc.*,
    23-cv-4396 (S.D.N.Y. filed May 25, 2023)..................................................7

*Rubenstein v. Union Bridge Holdings Ltd.*,
    21-cv-8133 (S.D.N.Y. filed Sept. 30, 2021)................................................7

*Saba Cap. CEF Opportunities 1 Ltd. v. Nuveen Floating Rate Income Fund*,
    88 F.4th 103 (2d Cir. 2023) ............................................................... 27, 35

*SEC v. Chenery Corp.*,
    318 U.S. 80 (1943)............................................................................... 40

*SEC v. Govil*,
    86 F.4th 89 (2d Cir. 2023) .................................................... *passim*

*SEC v. Romeril*,
    15 F.4th 166 (2d Cir. 2021) ................................................................ 16

*Simon v. New Haven Bd. & Carton Co., Inc.*,
    516 F.2d 303 (2d Cir. 1975). ............................................................. 32

*SM Kids, LLC v. Google LLC*,
    963 F.3d 206 (2d Cir. 2020) ............................................................... 21

*Smolowe v. Delendo Corp.*,
    136 F.2d 231 (2d Cir. 1943) ............................................................... 8

*Sonterra Cap. Master Fund Ltd. v. UBS AG*,
    954 F.3d 529 (2d Cir. 2020) ............................................................... 26

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ........................................................ *passim*

*State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*,
  374 F.3d 158 (2d Cir. 2004) ............................................. 16

*Steel Co. v. Citizens for Better Env't*,
  523 U.S. 83 (1998) .............................................................. 20

*Steel Partners II, L.P. v. Bell Indus., Inc.*,
  315 F.3d 120 (2d Cir. 2002) ........................................ 8, 9, 33

*Texlon Corp. v. Mfrs. Hanover Com. Corp.*,
  596 F.2d 1092 (2d Cir. 1979) ........................................... 15

*Thole v. U.S. Bank N.A.*,
  140 S. Ct. 1615 (2020) ...................................................... 40

*Tilghman v. Proctor*,
  125 U.S. 136 (1888) .......................................................... 36

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ................................................... *passim*

*Trichell v. Midland Credit Mgmt., Inc.*,
  964 F.3d 990 (11th Cir. 2020). ........................................ 28

*United States v. Hays*,
  515 U.S. 737 (1995) ........................................................... 22

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U. S. 464 (1982). ............................ 21

*W.G. v. Senatore*,
  18 F.3d 60 (2d Cir. 1994) ................................................. 20

*Wagner v. United States*,
  316 F.2d 871 (2d Cir. 1963) .............................................. 4

*Warth v. Seldin*,
  422 U.S. 490 (1975) ...................................................... 20, 22

viii

*Yukos Cap. S.A.R.L. v. Feldman*,
  977 F.3d 216 (2d Cir. 2020) ...................................................................... 4

**STATUTES**

17 CFR 240.10b-5 .....................................................................................11

15 U.S.C. § 78aa .......................................................................................... 3

15 U.S.C. § 78bb(a)(1) ..............................................................................31

15 U.S.C. § 78p(b) ............................................................................ 6, 9, 39

15 U.S.C. § 78u(d)(5) ................................................................................36

15 U.S.C. § 78u(d)(7) ................................................................................36

28 U.S.C. § 1291 ...................................................................................... 3, 4

28 U.S.C. § 1331 ......................................................................................... 3

**OTHER AUTHORITIES**

Ronald S. Poelman, *New SEC Short-Swing Profit Rules—Heightened
Scrutiny of Insiders*, 4 Utah Bar J., no. 5, May 1991 .....................................7

*What's Standing After TransUnion LLC v. Ramirez*, 96 N.YU. L. Rev.
  Online 269 (2021) ................................................................................... 48

**RULES**

Fed R. App. P. 4(a)(1)(A) ..........................................................................4

Fed. R. Civ. P. 12(b)(1) .............................................................................5

Fed. R. Civ. P. 12(h)(3) ...................................................................5, 12, 24

Fed. R. Civ. P. 60(b) ................................................................. 12, 16

Fed. R. Civ. P. 60(b)(4) ........................................................ 3, 5, 15, 16

## CONSTITUTIONAL PROVISIONS

U.S. Const., art. III, § 2, cl. 1 ..................................................... *passim*

## INTRODUCTION

This appeal presents a fundamental question of federal subject-matter jurisdiction—specifically, the requirements for standing under Article III of the United States Constitution—in cases seeking the disgorgement of "short-swing profits" under Section 16(b) of the Securities Exchange Act of 1934 ("Section 16(b)," "Exchange Act"). For more than a decade, the law on this issue had been settled in this Circuit by *Donoghue v. Bulldog Investors General Partnership*, 696 F.3d 170 (2d Cir. 2012) ("*Donoghue*"), which held that the mere violation of Section 16(b) was sufficient to confer Article III standing on the issuing corporation.

Under prevailing Article III standing doctrine, however, a statutory violation alone is insufficient to establish Article III standing. Rather, a statutory violation ***and*** "concrete harm" are both essential to demonstrate that a plaintiff has suffered the injury-in-fact required for Article III standing. A plaintiff's inability to allege concrete harm in addition to a statutory violation precludes Article III standing, along with federal subject-matter jurisdiction, because an injury-in-law is not an injury-in-fact. That is the situation here.

Plaintiff-Appellee Microbot Medical, Inc. ("Microbot") sued Defendant-Appellant Joseph Mona ("Mona") under Section 16(b) with no

1

allegation that Mona's retail trading in its stock resulted in harm of any kind. Contrary to fundamental constitutional principles, Microbot took the position that it did not have to demonstrate harm to establish Article III standing because Section 16(b) imposes strict liability as long as the statutory criteria for disgorgement of so-called "profits" have been satisfied. According to Microbot, Mona's status as an innocent, non-controlling shareholder that had no affiliation with Microbot, no insider status, and no inside information was irrelevant to his alleged liability under Section 16(b), as was the fact that Microbot did not allege—and expressly disclaimed any obligation to allege—any actual harm from Mona's trading.

The district court agreed with Microbot—adopting wholesale its argument that harm to the company is not required for a Section 16(b) claim—entered judgment in Microbot's favor in the amount of $484,614.30 and then denied Mona's subsequent motion to vacate the judgment and dismiss Microbot's claims for lack of subject-matter jurisdiction based on the absence of concrete harm. The district court's denial of Mona's request for relief is contrary to both Section 28(a) of the Exchange Act, which expressly limits recovery for an Exchange Act violation to "actual damages," and the principle that a disgorgement remedy is only available for an Exchange Act violation when the issuing corporation or its investors

suffered "pecuniary harm." The district court's holding that Microbot has Article III standing without having suffered concrete harm therefore erroneously equates an injury-in-law to an injury-in-fact. Because the district court acted at all times without constitutional authority, Mona respectfully requests that the Court reverse the district court's denial of his motion to vacate its void judgment and order the dismissal of Microbot's claims against him for lack of subject-matter jurisdiction.

## JURISDICTIONAL STATEMENT

### A.    District Court's Subject-Matter Jurisdiction

The United States District Court for the Southern District of New York ("district court") erroneously exercised subject-matter jurisdiction over the underlying litigation pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 15 U.S.C. § 78aa (exclusive jurisdiction over suits in equity and actions at law brought to enforce any liability or duty created by the Exchange Act as amended or the rules and regulations thereunder). *See* Appellant's Appendix ("AA") at AA-50.

### B.    Court of Appeals' Jurisdiction

This Court's jurisdiction derives from 28 U.S.C. § 1291. *See* 28 U.S.C. § 1291. The district court's denial of Mona's motion to vacate the underlying judgment pursuant to Federal Rule of Civil Procedure 60(b)(4)

3

for lack of subject-matter jurisdiction "is appealable under 28 U.S.C. § 1291, but the appeal brings up only the denial of the motion and not the judgment itself." *See Wagner v. United States*, 316 F.2d 871, 872 (2d Cir. 1963). With respect to the district court's denial of Mona's request to dismiss Microbot's claims against him for lack of subject-matter jurisdiction, this Court is constitutionally obligated "to inquire as to subject matter jurisdiction and satisfy itself that such jurisdiction exists." *See Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361 (2d Cir. 2000).

### C.  Timeliness of the Appeal.

The district court entered the order appealed from on March 5, 2024. (AA-243–AA-251.) Mona filed his notice of appeal on March 15, 2024, which was timely under Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure. (AA-252.) The district court's order denying Mona's motion to vacate the underlying judgment and dismiss Microbot's claims against him for lack of subject-matter jurisdiction disposed of the matter. (AA-243–AA-251)

### ISSUES PRESENTED FOR REVIEW

1.  Did the district court reversibly err in denying Mona's motion to vacate the underlying judgment and dismiss Microbot's claims against him for lack of subject-matter jurisdiction where Microbot had no Article III

4

standing because it did not allege or otherwise demonstrate concrete harm from the violation of Section 16(b) that purportedly resulted from Mona's retail trading in its stock?

2.     Did the district court reversibly err in finding that Microbot had Article III standing to maintain an action for disgorgement under Section 16(b) when neither Microbot nor its investors suffered pecuniary harm because of Mona's retail trading in its stock?

Mona asserts that the answer to each of these questions is "yes."

## STATEMENT OF THE CASE

### A.     Summary of the Case

The district court found Mona strictly liable as a statutory insider under Section 16(b) and ordered him to disgorge "short-swing profits" to Microbot in the sum of $484,614.30. (AA-174, AA-176, AA-253.) Pursuant Rules 12(b)(1), 12(h)(3), and 60(b)(4) of the Federal Rules of Civil Procedure, Mona subsequently moved to vacate the district court's underlying judgment and to dismiss Microbot's claims against him for lack of subject-matter jurisdiction on the basis that Microbot neither alleged nor otherwise demonstrated that it suffered "concrete harm" as a result of his retail trading in its stock. (AA-177.) This appeal follows the district court's denial of Mona's motion. (AA-252.) The Honorable George B. Daniels,

5

United States District Judge, rendered the decision appealed from after adopting the report and recommendation of the Honorable Robert W. Lehrburger, United States Magistrate Judge. (AA-228–AA-242, AA-251.) The district court's decision is unreported. (AA-243.)

### B. Microbot Commences This Action

On April 28, 2019, Microbot commenced this action under Section 16(b) with the filing of a complaint against Defendant Alliance Investment Management Ltd. ("Alliance"). (AA-34–AA-39.) Microbot filed the action after receiving a demand pursuant to Section 16(b) on behalf of purported Microbot shareholder Mark Rubenstein (although no evidence of Mr. Rubenstein's shareholdings was included with the demand). Microbot had little choice but to assent to pursuit of the action because Section 16(b) empowers a shareholder, such as Mr. Rubenstein, to bring an action if the board does not do so within 60 days. 15 U.S.C. § 78p(b) ("Suit . . . may be instituted at law or equity in any court of competent jurisdiction by the issuer, or by the owner of any securities of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request.").[1]

---

[1] This is in contrast to typical shareholder derivative actions, which are subject to Fed. R. Civ. P. 23.1's requirement that the shareholder must either make a litigation demand,

Microbot subsequently filed a first amended complaint against Alliance on June 5, 2019, and a second amended complaint against Alliance and Mona on November 18, 2019. (AA-40–AA-48, AA-49-AA-54.) Following the district court's grant of summary judgment in Alliance's

which will then be evaluated by the company's board in the exercise of its business judgment, or must allege particularized facts showing that demand would be futile. Section 16(b) effectively strips the board of its business judgment to decline to bring an action demanded by any shareholder. Section 16(b) also does not include the continuous and contemporaneous ownership requirements applicable in typical shareholder derivative actions, meaning a plaintiff can purchase a company's securities after the short-swing trades solely for purposes of bringing a Section 16(b) action. This has become common practice, with a small group of plaintiffs' attorneys (including Appellee's counsel here) enlisting repeat-player investors to establish a cottage industry of Section 16(b) litigation. *See, e.g., Portnoy v. Gold Reserve Corp.*, 711 F. Supp. 565 (E.D. Wash. 1989) (denying award for attorney's fees in part on public policy grounds and commenting on the "cottage industry in the short-swing profit field" involving particular attorneys and shareholders "regularly delivering complaints . . . to compel listed companies to pursue their 1934 Section 16(b) remedies"), and Ronald S. Poelman, *New SEC Short-Swing Profit Rules—Heightened Scrutiny of Insiders*, 4 Utah Bar J., no. 5, May 1991, at 13, 16 (noting "it is plaintiffs' attorneys who most often initiate such suits. Their incentive is attorneys' fees. . . . The three most prominent attorneys who specialize in Section 16 short-swing profit actions are Morris Levy of New York, David Lopez of New York, and Jerrold Shapiro of Chicago") (available at https://www.utahbar.org/wp-content/uploads/2022/11/1991_Final_05_May.pdf).

Indeed, Mr. Rubenstein has been the named plaintiff in at least a dozen Section 16(b) actions brought by Appellee's counsel, often involving thinly traded, penny stock companies (like Microbot) that Mr. Rubenstein is unlikely to have purchased for any purpose other than to bring litigation. *See, e.g., Donoghue and Rubenstein v. Tango Therapeutics, Inc.*, 23-cv-10860 (S.D.N.Y. filed Dec. 14, 2023); *Donoghue and Rubenstein v. Gundmogula*, 23-cv-9283 (S.D.N.Y. filed Oct. 20, 2023); *Donoghue and Rubenstein v. Antara Capital Master Fund LP*, 23-cv-4985 (S.D.N.Y. filed June 13, 2023); *Rubenstein v. Travelzoo Inc.*, 23-cv-4396 (S.D.N.Y. filed May 25, 2023); *Rubenstein v. Ishizuka*, 23-cv-4332 (S.D.N.Y. filed May 24, 2023); *Rubenstein v. Atlanticus Holdings Corp.*, 23-cv-2106 (S.D.N.Y. filed Mar. 13, 2023); *Rubenstein v. Union Bridge Holdings Ltd.*, 21-cv-8133 (S.D.N.Y. filed Sept. 30, 2021); *Donoghue and Rubenstein v. Oaktree Specialty Lending Corp.* 21-cv-4770 (S.D.N.Y. filed May 27, 2021); *Rubenstein v. Simplicity Esports & Gaming Co.*, 21-cv-191 (S.D.N.Y. filed Jan. 9, 2021); *In re Myovant Sciences Ltd. Section 16(b) Litig.*, 20-cv-1807 (S.D.N.Y. filed Feb. 29, 2020); *Rubenstein v. KnightSwift Transp. Holdings Inc.*, 19-cv-7802 (S.D.N.Y. filed Aug. 20, 2019); *Rubenstein v. Siokas*, 19-cv-6976 (S.D.N.Y. filed July 25, 2019).

favor, this action proceeded solely against Mona under Section 16(b). (AA-110.)

### C.    The Statutory Purpose of Section 16(b)

The "purpose of Section 16(b) is to deter 'insiders,' who are presumed to possess material non-public information about the issuer, from using such information to purchase or sell the issuer's equity securities at an advantage over persons with whom they trade." *See Steel Partners II, L.P. v. Bell Indus., Inc.*, 315 F.3d 120, 123 (2d Cir. 2002) The Congressional hearings that preceded the Exchange Act's passage indicate that Section 16(b), "specifically, was designed to protect the 'outside' stockholders against at least short-swing speculation by insiders with advance information." *Smolowe v. Delendo Corp.*, 136 F.2d 231, 235 (2d Cir. 1943) (footnote omitted). "Congress recognized that insiders may have access to information about their corporations not available to the rest of the investing public" and that, "[b]y trading on this information, these persons could reap profits at the expense of less well informed investors." *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 243 (1976). To accomplish its objective, Congress identified "directors, officers, and beneficial owners as those presumed to have access to inside information" and enacted a "flat rule"

8

under which the corporation could recover statutorily-defined "profits" from them. *Id.* at 243-44 (footnote omitted).

Section 16(b) "maximize[s] its deterrent effect" by providing that "whenever a director, officer or owner of ten percent or more of any class of an issuer's securities purchases and sells equity securities of that issuer within a six-month period, he must return any profits he realizes to the issuer." *Frankel v. Slotkin*, 984 F.2d 1328, 1337 (2d Cir. 1993) (quoting *Newmark v. RKO Gen., Inc.*, 425 F.2d 348, 351 (2d Cir. 1970)). "There are no other prerequisites or postulates to liability" under Section 16(b). *Id.* Rather, Section 16(b) "establishes strict liability for all transactions that meet its mechanical requirements." *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 310 (2d Cir. 1998). By its plain language, Section 16(b) "requires that 'any profit' derived from the matching of any purchase and any sale of a corporation's securities occurring within six months of each other must be disgorged, irrespective of the insider's actual knowledge or intent or whether overall trading during that six months (*i.e.*, all sales and purchases combined) resulted in a loss." *Steel Partners II*, 315 F.3d at 123. Under Section 16(b), the "issuing corporation or, derivatively, a shareholder is entitled to maintain an action seeking to have the profit disgorged to the corporation." *Id.* (citing 15 U.S.C. § 78p(b)).

9

### D. Microbot Seeks Disgorgement of Mona's "Short-Swing Profits"

In its second amended complaint, Microbot purported to assert claims against Mona for the recovery of "short-swing" profits under Section 16(b). (AA-49–AA-54.) Microbot did not allege that it or its investors had been harmed in any way by Mona, but instead maintained that it had no need to prove actual harm or loss to state a claim for relief under Section 16(b). *Id*.

Microbot characterized Section 16(b) as a non-punitive "strict liability statute" and alleged that it "must prove only that a defendant was an insider of a public company whose securities were registered under Section 12 of the Act or any subdivision thereof who profited from the purchase and sale of the company's securities within a period of less than six months." (AA-49.) According to Microbot, "[e]vidence of the defendant's intent, misuse of information, or bad faith is irrelevant and not required" and "insiders are simply required to disgorge profits retained in violation of the Act." *Id*.

Microbot also did not allege that Mona was an officer or director of the company, that he had access to non-public information about the company, or that he benefited from any advantage in his trading of Microbot stock relative to other shareholders. Instead, Microbot alleged that Mona was a "statutory insider" under Section 16(b) solely because he purportedly

became a "beneficial owner" of more than ten percent of its outstanding common stock at some time. (AA-49–AA-50.)

### E. Mona Denies Liability to Microbot and Charges Securities Fraud

On February 4, 2020, Mona filed an answer and counterclaim in response to Microbot's claims against him under Section 16(b). (AA-55–AA-73.) Not only did Mona deny liability to Microbot, he asserted that he sustained significant losses on his trades of Microbot stock because he relied on the company's false and misleading public statements. (AA-55–AA-56.) Mona alleged that Microbot was punitively demanding his disgorgement of "implied short-swing profits" under Section 16(b) that did not account for his actual net realized losses from his ownership of Microbot stock. (AA-55–AA-56.) Mona counterclaimed for securities fraud under Section 10(b) of the Exchange Act and SEC Rule 10b-5 based on his losses resulting from Microbot's false and misleading public statements. (AA-61–AA-73.)

### F. The District Court Enters Judgment in Microbot's Favor Under Section 16(b)

On March 30, 2021, the district court entered an order adopting the magistrate judge's report and recommendation that a motion for judgment on the pleadings filed by Microbot be granted and a judgment in the amount of $484,614.30 be entered against Mona under Section 16(b). (AA-111–AA-

11

160, AA-174, AA-176.) The report and recommendation adopted by the district court described Section 16(b) as "impos[ing] strict liability" on statutory insiders without any reference to "damages" because Section 16(b) requires "disgorgement" of "short-swing profits" as a "separate and independent remedy from any damages that may be available to an issuer seeking redress for insider misconduct." (AA-121, AA-112–AA-131, AA-174.) Accordingly, the next day, the district court entered judgment in Microbot's favor, and against Mona, in the amount of $484,614.30. (AA-176.)

### G. Mona Challenges the District Court's Subject-Matter Jurisdiction

On April 12, 2023, pursuant to Rules 12(b)(1), 12(h)(3), and 60(b) of the Federal Rules of Civil Procedure, Mona moved the district court for an order vacating its March 30, 2021 order granting Microbot judgment on the pleadings under Section 16(b) and dismissing Microbot's claims against him. (AA-177.) Mona asserted that Microbot lacked Article III standing to assert claims against him under Section 16(b) because it neither alleged nor demonstrated a concrete injury resulting from his retail trading activity in its stock. Doc. 221, *Microbot Med. Inc. v. Mona,* No. 19-cv-03782 (GBD) (RWL) (S.D.NY. filed Apr. 13. 2023). Mona argued that the Supreme

12

Court's opinion in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), as analyzed in *Packer on behalf of 1-800 Flowers.com, Inc. v. Raging Cap. Mgmt., LLC*, No. 15-CV-05933 (JMW) (E.D.N.Y. Mar. 13, 2023), *rev'd,* No. 23-367-cv (2d Cir. June 24, 2024), effectively overruled this Court's holding in *Donoghue*, 696 F.3d at 170, that a violation of Section 16(b) alone confers Article III standing. Doc. 221, *Microbot Med. Inc. v. Mona,* No. 19-cv-03782 (GBD) (RWL) (S.D.NY. filed Apr. 13. 2023).

### H.    The District Court Dismisses Mona's Counterclaim

On August 22, 2023, while Mona's jurisdictional motion was pending, the district court adopted the magistrate judge's report and recommendation that Mona's counterclaim be dismissed with prejudice. (AA-218, AA-226.) The district court entered judgment dismissing Mona's counterclaim with prejudice that same day. (AA-227.)

### I.    The District Court Denies Mona's Motion to Vacate the Underlying Judgment and Dismiss Microbot's Claims for Lack of Subject-Matter Jurisdiction

On March 5, 2024, the district court entered an order adopting the magistrate judge's report and recommendation that Mona's jurisdictional challenge be denied. (AA-228–AA-242, AA-251.) At the outset, the district court recognized that Section 16(b) imposes "'a form of strict liability'" and "applies even to those who might have violated it inadvertently." (AA-246.)

13

With respect to Article III standing, the district court cited this Court's holding in *Donoghue*, 696 F.3d at 180, that "'short-swing trading in an issuer's stock by a 10% beneficial owner . . . causes injury to the issuer sufficient for constitutional standing.'" (AA-246.) Based on *Donoghue*, the district court pointed out that "the violation of § 16(b) constitutes a breach of statutorily-imposed fiduciary duty and thereby results in a constructive trust containing the profits reaped from the violation" and that the "issuer has a legal right to the profits contained in the constructive trust." (AA-247.)

Concluding that *TransUnion* was not an intervening decision, and that *Donoghue* remains the controlling authority in this Circuit on the issue of Article III standing, the district court found that Microbot has Article III standing. (AA-249–AA-251.) The district court reasoned that *Donoghue* "determined that § 16(b) plaintiffs suffer concrete harm analogous to 'the common law injury of breach of trust'" and that it therefore is "compatible with *TransUnion*'s requirement that a plaintiff has suffered a harm with 'a close historical or common-law analogue.'" (AA-249.) Reiterating that Congress imposed "strict liability" in enacting Section 16(b), "thereby making even traders with no affiliation to a company 'statutory insiders' if they surpass a ten percent beneficial ownership," the district court held that Microbot "has suffered a concrete harm" because it "has been deprived of"

14

Mona's "profits reaped from his short-swing trading of Plaintiff's stock in violation of § 16(b)." (AA-250–AA-251.)

On this basis, the district court found that Microbot has Article III standing and that subject-matter jurisdiction exists. (AA-251.) The district court therefore denied Mona's motion to vacate the underlying judgment and dismiss Microbot's claims against him. (AA-251.) This appeal followed. (AA-252.)

## STANDARD OF REVIEW

Rule 60(b) governs motions for relief from a final judgment or order and sets forth "six independent grounds for relief." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005). Relevant here is Rule 60(b)(4), which authorizes courts to grant relief from a final judgment, order, or proceeding that is "void." *See* Fed. R. Civ. P. 60(b)(4); *Kaplan v. Bank Saderat PLC*, 77 F.4th 110, 117 (2d Cir. 2023). A judgment is void under Rule 60(b)(4) "'only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" *Grace v. Bank Leumi Tr. Co. of New York*, 443 F.3d 180, 193 (2d Cir. 2006) (quoting *Texlon Corp. v. Mfrs. Hanover Com. Corp.*, 596 F.2d 1092, 1099 (2d Cir. 1979)). A void judgment must be "vacated." *See id*.

15

Rule 60(b)(4) motions are unlike other Rule 60(b) motions, which the Court generally reviews for abuse of discretion. *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 178 (2d Cir. 2004). Under Rule 60(b)(4), "'a deferential standard of review is not appropriate because if the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4).'" *Central Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 189 (2d Cir. 2003) (italics in original, quoting *Jalapeno Prop. Mgmt., LLC v. Dukas*, 265 F.3d 506, 515 (6th Cir. 2001) (Batchelder, J., concurring)). For this reason, it is well settled that this Court reviews de novo a district court order denying a motion under Rule 60(b)(4). *See SEC v. Romeril*, 15 F.4th 166, 170 (2d Cir. 2021); *Burda Media, Inc.*, 417 F.3d at 298; *State St. Bank & Tr. Co.*, 374 F.3d at 178.

Like all federal appellate courts, this Court "always 'must satisfy itself not only of its own [subject-matter] jurisdiction, but also of that of the lower courts in a cause under review.'" *See Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 95 n.4 (2d Cir. 2023) (insertion in original, quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)). When reviewing a district court's "assumption of subject matter jurisdiction," the Court "accept[s] its findings of fact unless they are clearly erroneous, while

16

examining questions of law *de novo*." *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) (italics in original).

## SUMMARY OF ARGUMENT

The district court's denial of Mona's motion to vacate the underlying judgment entered in Microbot's favor and dismiss Microbot's claims against him is contrary to the well-settled constitutional principles that govern Article III standing and federal subject-matter jurisdiction. Specifically, the district court held that Microbot's mere allegation that Mona violated Section 16(b) through his retail trading in its stock provided a sufficient basis for Article III standing. A plaintiff, however, must establish "concrete harm" in addition to a statutory violation to establish Article III standing. Microbot's inability to allege or otherwise demonstrate concrete harm precludes its Article III standing to maintain this Section 16(b) action and deprives federal courts of subject-matter jurisdiction as a matter of law.

Nonetheless, only days ago, this Court held that a violation of Section 16(b) causes a "concrete injury" sufficient for Article III standing under the Supreme Court's recent analysis in *TransUnion*, 141 S. Ct. at 2190. *See Packer v. Raging Cap. Mgmt., LLC*, No. 23-367-cv, slip op. at 18-19, 21-22 (2d Cir. June 24, 2024). To reach this conclusion, the Court relied in part on *Donoghue*, 696 F.3d at 170, an opinion that predated *TransUnion*. In

17

searching for a "concrete injury" sufficient to confer Article III standing in both *Packer* and *Donoghue*, the Court overlooked the explicit statutory language in the Exchange Act that defines (and limits) the injuries that may be pursued for Exchange Act violations, including the Section 16(b) violations asserted by Microbot. Only "actual damages" are recoverable for violations of the Exchange Act, according to the plain language of Section 28(a). Rather than limiting its "concrete injury" analysis to the narrowly circumscribed injury permitted under the Exchange Act, the Court in both *Donoghue* and *Packer* recognized "injuries" that appear nowhere in the Exchange Act, including "intangible injuries" for breaches of fiduciary duties not permitted or contemplated by Congress in the Exchange Act. The Exchange Act limits recovery for violations of its provisions to "actual damages," which Microbot has not alleged. Accordingly, Microbot suffered no "concrete injury" and lacks Article III standing.

*Packer* compounds the consequences of judicially creating a "concrete injury" not permitted by the Exchange Act—disgorgement for Exchange Act violations—by ignoring this Court's own limitations of that type of injury. The Court recently held that proof of "pecuniary harm" is a necessary predicate for awarding the Securities and Exchange Commission disgorgement resulting from Exchange Act violations. *See SEC v. Govil*, 86

18

F.4th 89, 103 (2d Cir. 2023) (relying on *Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020)). To the extent disgorgement is a remedy available to private plaintiffs for violations of the Exchange Act—and nothing in the Exchange Act suggests such a remedy is available to private parties—it is axiomatic that private parties do not have Article III standing to pursue remedies unavailable to the SEC. In other words, Article III standing to maintain an Exchange Act disgorgement action necessarily requires, at a minimum, "pecuniary harm" suffered by the issuing corporation or its investors. Microbot did not allege any such "pecuniary harm," and consequently has no standing to maintain its action.

Finally, even if the court concludes that Microbot need not allege "actual damages" as required under Section 28(a) of the Exchange Act and need not establish "pecuniary harm" as required under *Govil*, a breach of fiduciary duty does not cause a "concrete injury" as required by Article III standing doctrine. Not only are damages typically an essential element of a breach of fiduciary duty claim, the jurisprudence of the Supreme Court and this Circuit establish that an alleged statutory violation consisting of a breach of fiduciary duty requires concrete harm to confer Article III standing. Because the underlying judgment in Microbot's favor therefore is void and

19

subject-matter jurisdiction over Microbot's claims is lacking under any circumstances, an order of reversal is necessary and appropriate at this time.

## ARGUMENT

### I. The District Court's Denial of Mona's Motion to Vacate the Underlying Judgment and Dismiss Microbot's Claims Against Him Was Based on Deficient Article III Standing

"Subject-matter jurisdiction" is defined as a court's "statutory or constitutional power to adjudicate the case." *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998). A fundamental tenet of American law is that "federal courts are courts of limited jurisdiction, empowered to act only within the bounds of Article III of the United States Constitution and statutes enacted by Congress stemming therefrom." *See W.G. v. Senatore*, 18 F.3d 60, 64 (2d Cir. 1994). Consistent with this principle, Article III confines the exercise of judicial power by federal courts to "cases" or "controversies." *See* U.S. Const., art. III, § 2, cl. 1. "This requirement is 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Crist v. Comm'n on Presidential Debates*, 262 F.3d 193, 194 (2d Cir. 2001) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

A case or controversy under Article III requires that the plaintiff "have a 'personal stake' in the case—in other words, standing." *TransUnion*,

141 S. Ct. at 2203 (internal quotation marks omitted); *see also SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020) ("[t]he standing doctrine, which emerges from Article III, is designed 'to ensure that federal courts do not exceed their authority as it has been traditionally understood'"). By requiring a "personal stake" in the dispute, Article III ensures that the plaintiff is not "a mere bystander," but rather has a right "to get in the federal courthouse door and obtain a judicial determination of what the governing law is." *FDA v. All. for Hippocratic Med.*, No. 20-235, slip op. at 6 (U.S. June 13, 2024). This showing mandated by Article III ensures that federal courts do not "opine on legal issues" raised by "citizens who might 'roam the country'" searching for "'wrongdoing.'" *Id.* (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U. S. 464, 487 (1982)).

According to the Supreme Court, Article III standing is "'perhaps the most important' of the case-or-controversy doctrines placing limits on federal judicial power." *All. for Env't Renewal, Inc. v. Pyramid Crossgates*, 436 F.3d 82, 85 (2d Cir. 2006) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). "More fundamental than judicially imposed, prudential limits on the exercise of federal jurisdiction is the 'core component' of standing 'derived directly from the Constitution.'" *Id.* (quoting *Allen*, 468 U.S. at 751).

21

Because of its constitutional foundation, Article III standing is not subject to waiver, and federal courts must find that such standing exists as part of their "'independent obligation to examine their own jurisdiction'" before deciding a case on the merits. *See Lebron v. Nat'l R.R. Passenger Corp. (Amtrak)*, 69 F.3d 650, 659 (2d Cir. 1995) (quoting *United States v. Hays*, 515 U.S. 737, 742 (1995)).

Constitutional standing "imports justiciability" because "whether the plaintiff has made out a 'case or controversy' between himself and the defendant" under Article III "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth*, 422 U.S. at 498. "As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Id*. at 498-99. Federal jurisdiction "can be invoked ***only*** when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action.'" *Id*. at 499 (emphasis added).

Commonly referred to as the "irreducible constitutional minimum of standing," Article III standing has three elements. *See Jenkins v. United States*, 386 F.3d 415, 417 (2d Cir. 2004). A plaintiff must demonstrate

22

"(1) that he has an injury in fact; (2) that there is a causal connection between his injury and the conduct complained of; and (3) that his injury will be redressed by a favorable judicial decision." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022); *see also All. for Hippocratic Med.*, No. 20-235, slip op. at 8 ("[t]hose specific standing requirements constitute 'an essential and unchanging part of the case-or-controversy requirement of Article III'"). The Supreme Court has long recognized that, "[s]ince they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

It is well settled that "constitutional standing implicates the subject matter jurisdiction of the Court." *See Clinton Nurseries, Inc. v. Harrington*, 998 F.3d 56, 63 (2d Cir. 2021). Because standing "is a question of subject matter jurisdiction," a federal court must find that standing exists under Article III before it has jurisdiction to decide a case. *See Ctr. for Reprod. Law & Policy v. Bush*, 304 F.3d 183, 193 (2d Cir. 2002). A federal court therefore must immediately dismiss an action for lack of subject-matter jurisdiction whenever it determines that the plaintiff does not have Article III

23

standing to bring the action. *See Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015); *see also* Fed. R. Civ. P. 12(h)(3) ("[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

In sum, Article III standing requires that a plaintiff "allege, and ultimately prove, that he has suffered an injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief." *See Jenkins*, 386 F.3d at 417 (italics omitted). Microbot made no attempt whatsoever to satisfy this constitutional prerequisite. No matter how long or diligently this Court searches, it will never find an injury-in-fact in Microbot's second amended complaint. Microbot cannot show injury-in-fact because Mona's retail trading did not— and could not—cause an injury-in-fact. On this basis, the district court's denial of Mona's motion to vacate the underlying judgment entered in Microbot's favor and dismiss all claims against him for lack of subject-matter jurisdiction constitutes reversible error.

## II. Microbot Lacks Article III Standing Because It Has Not Demonstrated an Injury-in-Fact as a Matter of Law

The cornerstone of the district court's order denying Mona's motion to vacate the underlying judgment and dismiss all claims against him is the

misguided notion that Microbot alleged or otherwise established an injury-in-fact, which is the "'[f]irst and foremost' of standing's three elements." *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Steel Co.*, 523 U.S. at 103). Even the most cursory review of Microbot's second amended complaint reveals that Microbot neither alleged nor suffered an injury-in-fact. (AA-49–AA-54.) Microbot therefore did not satisfy its burden to establish that it had Article III standing to pursue its claims against Mona in federal court. *See TransUnion*, 141 S. Ct. at 2207 ("[a]s the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing"). Because Microbot's lack of standing based on the absence of an injury-in-fact renders the judgment entered in its favor void as a matter of law, the district court manifestly erred in denying Mona's motion to vacate. *See McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 297, 305 (2d Cir. 2021) (affirming dismissal for lack of subject-matter jurisdiction where "plaintiffs failed to allege an injury in fact sufficient to confer Article III standing"); *see also Da Silva*, 229 F.3d at 365 ("if there is lacking what is properly classified as subject matter jurisdiction, all actions of a federal court are void").

 "To plead injury in fact, a plaintiff must allege 'that he or she suffered an invasion of a legally protected interest that is concrete and particularized

25

and actual or imminent, not conjectural or hypothetical.'" *Sonterra Cap. Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 534 (2d Cir. 2020) (quoting *Spokeo*, 136 S. Ct. at 1548). Not only did the district court overlook Microbot's failure to plead this essential element of Article III standing, which confirmed Microbot's lack of a personal stake in the outcome of this litigation, it mistakenly denied Mona relief based on this Court's opinion in *Donoghue*, 696 F.3d at 180, which held that "short-swing trading in an issuer's stock by a 10% beneficial owner in violation of Section 16(b) of the Securities Exchange Act causes injury to the issuer sufficient for constitutional standing." The district court then exacerbated its error by misapprehending that mere violations of statutes like Section 16(b) are insufficient to establish the concrete harm required for an injury-in-fact under Article III. *See TransUnion*, 141 S. Ct. at 2190, 2205. By erroneously conflating Mona's alleged violation of Section 16(b) with constitutionally-mandated concrete harm, the district court found that Microbot has Article III standing where none exists as a matter of law.

### A.  Microbot Has Neither Alleged Nor Suffered Concrete Harm, Which Is a Prerequisite to an Injury-in-Fact for Article III Standing

For purposes of Article III standing, "[a]n injury in fact must be 'concrete,' meaning that it must be real and not abstract." *All. for*

26

*Hippocratic Med.*, No. 20-235, slip op. at 8; *see also Spokeo*, 136 S. Ct. at 1548 (a "'concrete' injury must be 'de facto'; that is, it must actually exist"). A concrete injury is essential for Article III standing "even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. Congress might "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law," but the "[[s]tatutory] broadening [of] the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury." *Lujan*, 504 U.S. at 578 (insertions in original, quoting *Sierra Club v. Morton*, 405 U.S. 727, 738 (1972)). Using its lawmaking power, Congress "'may not simply enact an injury into existence,'" which "is to say, a plaintiff must still be actually injured; she must have sustained a concrete injury." *Saba Cap. CEF Opportunities 1 Ltd. v. Nuveen Floating Rate Income Fund*, 88 F.4th 103, 114 (2d Cir. 2023) (quoting *TransUnion*, 141 S. Ct. at 2205).

Federal courts must "independently decide whether a plaintiff has suffered a concrete harm under Article III" even when Congress creates a statutory prohibition, obligation, or cause of action, such as the presumed insider trading and disgorgement provisions of Section 16(b). *See TransUnion*, 141 S. Ct. at 2205. In other words, federal courts "'cannot treat

27

an injury as 'concrete' for Article III purposes based only on Congress's say-so.'" *Id.* (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 999 n. 2 (11th Cir. 2020)). Instead, the "most obvious" concrete injuries include "traditional tangible harms, such as physical harms and monetary harms," and cognizable "intangible harms," such as "reputational harms, disclosure of private information, and intrusion upon seclusion," which have been "traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 2204. The Supreme Court has explained:

> For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law. Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. ***But under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court.***

*Id.* at 2205 (emphasis added). For this reason, the Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and

28

purports to authorize that person to sue to vindicate that right.'" *Id.* (quoting *Spokeo*, 578 U. S. at 341).

Moreover, the concrete harm requirement plays a critical role in preserving constitutional order. The Supreme Court observed that, "if the law of Article III did not require plaintiffs to demonstrate a 'concrete harm,' Congress could authorize virtually any citizen to bring a statutory damages suit against virtually any defendant who violated virtually any federal law." *TransUnion*, 141 S. Ct. at 2206. The consequence of a "regime where Congress could freely authorize *unharmed* plaintiffs to sue defendants who violate federal law not only would violate Article III but also would infringe on the Executive Branch's Article II authority." *Id.* at 2207 (italics in original). As a result, the "concrete-harm requirement" is "essential to the Constitution's separation of powers." *Id.*; *see also Raines v. Byrd*, 521 U.S. 811, 820 (1997) ("'the law of Art. III standing is built on a single basic idea—the idea of separation of powers'").

According to these fundamental principles, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III," as Microbot sought to do here. *See Spokeo*, 136 S. Ct. at 1549; *see also Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 80 (2d Cir. 2017) (observing that, "'[e]ven where

29

Congress has accorded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest'"). The Supreme Court has bluntly warned: "No concrete harm, no standing." *TransUnion*, 141 S. Ct. at 2200. Yet, in denying Mona relief, the district court held that Microbot has Article III standing, without regard to whether it suffered concrete harm, based solely on Mona's purported violation of Section 16(b). (AA-243–AA-251.)

Not only did the district court contravene Article III by finding that the mere allegation of a statutory violation was sufficient to satisfy constitutional standing requirements, it overlooked that Congress statutorily defined the concrete harm that must exist for a plaintiff to maintain an action under the Exchange Act. Specifically, Congress expressly limited recovery under the Exchange Act to statutory violations that resulted in "actual damages." Section 28(a) of the Exchange Act provides:

> No person permitted to maintain a suit for damages under the provisions of this chapter shall recover, through satisfaction of judgment in 1 or more actions, a total amount in excess of the ***actual damages*** to that person on account of the act complained of.

30

15 U.S.C. § 78bb(a)(1) (emphasis added). Consistent with this provision, this Court has long recognized that "the purpose of section 28(a) is to **compensate civil plaintiffs for economic loss** suffered as a result of wrongs committed in violation of the Exchange Act, whether the measure of those compensatory damages be out-of-pocket loss, the benefit of the bargain, or some other appropriate standard." *Osofsky v. Zipf*, 645 F.2d 107, 111 (2d Cir. 1981) (emphasis added); *see also FAA v. Cooper*, 566 U.S. 284, 293 (2012) (observing that "some courts have construed 'actual damages' in the Securities Exchange Act of 1934, 15 U.S.C. § 78bb(a), to mean 'some form of economic loss,'" including the Fifth Circuit in *Herpich v. Wallace*, 430 F.2d 792, 810 (5th Cir. 1970), and the Ninth Circuit in *Ryan v. Foster & Marshall, Inc.*, 556 F.2d 460, 464 (9th Cir. 1977)). Thus, according to the plain language of Section 28(a), a plaintiff must allege a statutory violation **plus** concrete harm in the form of "actual damages" to have Article III standing to pursue a claim under the Exchange Act, including a claim for violation of Section 16(b).

Although the Exchange Act does not define "actual damages," the term had a well-established meaning at the time Congress enacted Section 28(a). *See Osofsky*, 645 F.2d at 111. Long before the passage of the

31

Exchange Act in 1934, the Supreme Court had defined "actual damages" to mean "compensatory damages":

> Damages are given as a compensation, recompense, or satisfaction to the plaintiff, for an injury actually received by him from the defendant. ***Compensatory damages and actual damages mean the same thing; that is, that the damages shall be the result of the injury alleged and proved, and that the amount awarded shall be precisely commensurate with the injury suffered, neither more nor less***, whether the injury be to the person or estate of the complaining party.

*Birdsall v. Coolidge*, 93 U.S. 64, 64 (1876) (emphasis added); *see also Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 389 (1970) ("damages should be recoverable only to the extent that they can be shown"); *Simon v. New Haven Bd. & Carton Co., Inc.*, 516 F.2d 303, 306 (2d Cir. 1975) (the rule that "uncertainty as to the amount of damages is to be cast on a wrongdoer does not extend to uncertainty as to the fact of damages"). Given that Section 28(a) expressly limits recovery to "actual damages," it necessarily contemplates compensatory damages and "prohibits punitive damages in actions brought under that Act." *Globus v. Law Research Serv., Inc.*, 418 F.2d 1276, 1286 (2d Cir. 1969); *see also Byrnes v. Faulkner, Dawkins & Sullivan*, 550 F.2d 1303, 1313 (2d Cir. 1977) ("[t]his section on its face precludes recovery of punitive damages").

32

Contrary to the plain language of Section 28(a), however, the district court's disgorgement award to Microbot under Section 16(b) does not constitute "actual damages" as a matter of law. Rather than compensatory, this award is properly characterized as "presumed damages," consisting of "a monetary award calculated without reference to specific harm." *See Doe v. Chao*, 540 U.S. 614, 621 (2004); *see also Cooper*, 566 U.S. at 313 (Sotomayor, J., dissenting) ("[t]he elimination of presumed damages from the bill can only reasonably imply that what Congress left behind—'actual damages'—comprised damages that are not presumed, *i.e.*, damages proven by competent evidence in the record"). As such, in the context of an action brought to recover alleged "short-swing profits" under Section 16(b) without regard to whether actual damages have been sustained, including Microbot's claims against Mona, any "award to the corporation is essentially a windfall, since the corporation has suffered no harm for which it is being recompensed." *Blau v. Rayette-Faberge, Inc.*, 389 F.2d 469, 474 (2d Cir. 1968); *see also Steel Partners II*, 315 F.3d at 127 ("we hold that because Steel Partners had neither access to nor an opportunity to abuse material non-public information, it is not required to disgorge the December Dividend under either a literal reading of Section 16(b) or the policies that underlie the rule"; "to require disgorgement under the circumstances of this

33

case would simply result in a windfall to Bell at the expense of a spurned suitor").

An award of this nature is also inherently punitive because it serves to unjustly enrich an issuing corporation, including Microbot, that suffered no harm at the expense of an innocent, non-controlling shareholder, such as Mona. *See Gen. Am. Invs. Co. v. Comm'r*, 211 F.2d 522, 524 (2d Cir. 1954) (pointing out that a disgorgement award under Section 16(b) can be characterized "as a 'windfall' to the corporation or as in the nature of a 'penalty' imposed upon the director and the stockholder"), *aff'd*, 348 U.S. 434 (1955); *see also Kokesh v. SEC*, 137 S. Ct. 1635, 1644 (2017) (observing that "in many cases" a disgorgement award "is not compensatory"). Microbot does not allege that it suffered concrete harm, or even suggest that it sustained injury of any kind, as a result of Mona's retail trading in its stock. Instead, Microbot alleges that "[e]vidence of the defendant's intent, misuse of information, or bad faith is irrelevant and not required" because "Section 16(b) is a strict liability statute," where a "plaintiff must prove only that a defendant was an insider of a public company whose securities were registered under Section 12 of the Act or any subdivision thereof who profited from the purchase and sale of the company's securities within a period of less than six months." (AA-49.) By

34

agreeing with Microbot and denying Mona's request for relief under these circumstances, the district court necessarily held Mona strictly liable under Section 16(b) for an injury that Congress purported to legislate into existence.

In sum, the district court's use of the disgorgement remedy, rather than actual damages as required by Section 28(a), demonstrates the absence of concrete harm. Microbot has not suffered concrete harm merely because the district court invoked Section 16(b)'s disgorgement remedy against Mona. Congress cannot create Article III standing simply by enacting a remedy for an injury that does not exist, such as here, where Microbot's actual damages are zero. *See TransUnion*, 141 S. Ct. at 2205; *Saba Cap. CEF Opportunities 1*, 88 F.4th at 114. Because Microbot did not allege or otherwise demonstrate concrete harm in the form of actual damages, it lacks Article III standing as a matter of law. The district court therefore manifestly erred in denying Mona's motion to vacate the underlying judgment and dismiss Microbot's claims against him.

**B.      Article III Standing to Maintain an Action for Disgorgement Under Section 16(b) Requires Pecuniary Harm Suffered by the Issuing Corporation or Its Investors, Which Is Lacking Here.**

35

Disgorgement is an equitable remedy intended for the benefit of "victims." *See Liu*, 140 S. Ct. at 1940. This remedy is based on the "foundational principle" that "'[i]t would be inequitable that [a wrongdoer] should make a profit out of his own wrong.'" *Id*. at 1943 (quoting *Root v. Ry. Co.*, 105 U.S. 189, 207 (1882)). Significantly, however, "[a]t the same time courts recognized that the wrongdoer should not profit 'by his own wrong,' they also recognized the countervailing equitable principle that the wrongdoer should not be punished by 'pay[ing] more than a fair compensation to the person wronged.'" *Id*. (quoting *Tilghman v. Proctor*, 125 U.S. 136, 145-46 (1888)). For this reason, the Supreme Court has compared "disgorgement to restitution that simply 'restor[es] the status quo,' thus situating the remedy squarely within the heartland of equity." *Id*. (internal quotation marks omitted).

Instructive here is this Court's recent analysis of these basic principles in *Govil*, 86 F.4th at 89, where it concluded that defrauded investors must suffer pecuniary harm before they are entitled to a disgorgement remedy under 15 U.S.C. § 78u(d)(5) or 15 U.S.C. § 78u(d)(7). *See id*. at 94, 103. The Court explained:

> If we were to understand "victim" as including defrauded investors who suffered no pecuniary harm—and thus to allow those investors to receive

36

the proceeds of disgorgement—we would not be restoring the status quo for those investors. ***We would be conferring a windfall on those who received the benefit of the bargain.***

*Id*. at 103 (emphasis added, footnote omitted). The Court reasoned that when *Liu* stressed that disgorgement as an equitable remedy meant "'return[ing] the funds to victims,'" it was "presuppos[ing] pecuniary harm" because "[f]unds cannot be returned if there was no deprivation in the first place." *Id*. (quoting *Liu*, 140 S. Ct. at 1948).

The Court needs to look no further than the consequences of the district court's disgorgement order against Mona to find that these principles likewise compel the conclusion that this equitable remedy should be available under Section 16(b) only when an issuing corporation or its investors have suffered pecuniary harm. Disgorgement is inappropriate here because there is no status quo to restore. Microbot plainly is not a "victim" under the Court's definition. As the Court feared in *Govil*, the district court's disgorgement order results in a windfall to Microbot because it suffered no pecuniary harm as a result of any act or omission by Mona, which is not surprising given that Mona is an innocent, non-controlling shareholder that had no affiliation with Microbot, no insider status, and no inside information. (AA-243.)

37

Because the lack of pecuniary harm equates to a lack of concrete injury, it is axiomatic that neither issuing corporations, such as Microbot, nor their investors have Article III standing to maintain a Section 16(b) disgorgement action unless they have suffered pecuniary harm as a result of the defendant's alleged conduct. With Microbot unable to allege or otherwise demonstrate any pecuniary harm arising from Mona's retail trading in its stock, the district court plainly erred in denying Mona's motion to vacate the underlying judgment and dismiss Microbot's claims against him.

### C. The Analogy to Common Law Breach of Fiduciary Duty and Constructive Trust, Which the District Court Invoked to Hold Mona Strictly Liable Under Section 16(b), Is Inapplicable to Microbot's Claims

The district court's effort to satisfy the "concrete harm" requirement of Article III standing by analogizing Microbot's Section 16(b) claims to common law causes of action for breach of fiduciary duty and constructive trust cannot salvage its erroneous order denying Mona's motion to vacate the underlying judgment and dismiss Microbot's claims against him. With "respect to the concrete-harm requirement in particular," it is settled that "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a

lawsuit in American courts." *See TransUnion*, 141 S. Ct. at 2204 (quoting *Spokeo*, 136 S. Ct. at 1549). This "inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury," but it is not "an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id.*

The district court's analysis runs afoul of this guidance because it overlooks that no historical or common law analogue exists for Section 16(b)'s imposition of fiduciary-like duties on an innocent, non-controlling shareholder, such as Mona, who was merely a retail stock trader that had no affiliation with Microbot, no insider status, and no inside information at all relevant times. *See* Erwin Chemerinsky, *What's Standing After TransUnion LLC v. Ramirez*, 96 N.YU. L. Rev. Online 269, 285-86 (2021) (citing *Donoghue* and pointing out that there is no historical or common law analogue for Section 16(b), where "no injury would exist without the statute" and "an investor's on-going financial interest in recovering short-swing profits pursuant to § 78p(b) was enough to satisfy injury-in-fact for standing" prior to *TransUnion*). Even true insiders, such as officers and directors, have no common law fiduciary duty regarding stock trading, except when they act on material, non-public information. *See, e.g., SEC v.*

39

*Chenery Corp.*, 318 U.S. 80, 88 (1943) ("[t]he courts do not impose upon officers and directors of a corporation any fiduciary duty to its stockholders which precludes them, merely because they are officers and directors, from buying and selling the corporation's stock").

Furthermore, the district court overlooks that, regardless of whether Section 16(b) could be construed to impose a "fiduciary duty" or "constructive trust" on an innocent, non-controlling shareholder like Mona, Microbot still has not alleged an actual injury of any kind that would satisfy the "concrete harm" required for Article III standing. By itself, an alleged breach of fiduciary duty does not constitute an injury-in-fact. *See, e.g., Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 244 n.17 (2d Cir. 2020) ("'actual injury'—or 'damage'—is an essential element of a breach of fiduciary duty claim under New York law"). The Supreme Court recently held that an alleged statutory violation consisting of a breach of fiduciary duty without an associated concrete injury, such as monetary loss, does not confer Article III standing. *See Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618, 1620-22 (2020) (finding no Article III standing to maintain federal action for ERISA violations resulting from alleged breach of fiduciary duty where plaintiffs suffered no concrete injury). Last year, this Court similarly recognized the "centrality of pecuniary harm" to the constructive trust

40

remedy. *See Govil*, 86 F.4th at 103. Consequently, under the current state of the law, the district court's reliance on *Donoghue* for the proposition that "§ 16(b) plaintiffs suffer concrete harm analogous to 'the common law injury of breach of trust'" merely because of an alleged statutory violation is untenable. (AA-249.)

Further compelling this conclusion is this Court's determination that dismissal was warranted in two recent cases in which plaintiffs, like Microbot, sought damages based solely on statutory violations without demonstrating concrete harm. This Court made clear in both cases that Article III standing arises only when a statutory violation results in concrete harm.

First, in *Maddox v. Bank of New York Mellon Trust Co., N.A.*, 19 F.4th 58 (2d Cir. 2021), the Court held that the plaintiffs lacked Article III standing to seek statutory damages arising from a bank's violation of New York's mortgage-satisfaction-recording statutes because they did not suffer concrete harm. The Court reasoned that "in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm." *Id*. at 64. Rather, "plaintiffs must show that the statutory violation caused them a concrete harm, regardless of whether the statutory rights violated were substantive or procedural." *Id*. at 64 n. 2.

41

Second, in *Harty*, 28 F.4th at 435, the Court held that a disabled plaintiff lacked Article III standing to maintain his complaint, which charged that the defendant's hotel website violated the Americans with Disabilities Act of 1990, where he did not allege concrete harm because he viewed the website for accessibility accommodations without intending to visit the subject hotel. The Court observed that "a plaintiff has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm beyond the statutory violation itself." *Id*. at 443. Even assuming that the plaintiff could "allege that he was deprived of information to which he is entitled by the ADA, he must also allege 'downstream consequences from failing to receive the required information' in order to have an Article III injury in fact." *Id*. at 444 (quoting *TransUnion*, 141 S. Ct. at 2214).

Because the statutory violations alleged in *Maddox* and *Harty* caused no concrete harm, the Court held that the plaintiffs lacked Article III standing as a matter of law. *See Harty*, 28 F.4th at 439-40, 445; *Maddox*, 19 F.4th at 60, 66. Microbot's inability to allege or otherwise demonstrate concrete harm mandates the same conclusion in this case.

In sum, dispositive here is Microbot's inability to allege or otherwise demonstrate concrete harm. Microbot brought its Section 16(b) claims

42

against Mona without having "suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." *See TransUnion*, 141 S. Ct. at 2206. "An uninjured plaintiff," like Microbot, "who sues in those circumstances is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's 'compliance with regulatory law' (and, of course, to obtain some money via the statutory damages)." *Id*. According to the Supreme Court, "[t]hose are not grounds for Article III standing." *Id*. (footnote omitted). Thus, the district court's denial of Mona's motion to vacate the underlying judgment and dismiss Microbot's claims against him cannot withstand scrutiny under Article III standing doctrine and should be reversed. *See id*. at 2206, 2214; *see also Forte Biosciences, Inc. v. Camac Fund, LP*, No. 3:23-CV-2399-N, slip op. at 6 (N.D. Tex. June 11, 2024) (Doc. 4) (dismissing Section 16(b) claim for lack of standing where plaintiff "does not plead any injury to itself from the alleged section 16(b) violation").

## CONCLUSION

For the foregoing reasons, Mona respectfully requests that the Court reverse the district court's order denying his motion to vacate the underlying judgment in its entirety and remand this matter to the district court with

43

instructions to dismiss Microbot's second amended complaint against him for lack of subject-matter jurisdiction.

Dated: June 28, 2024

Respectfully submitted,

*/s/ Andrew W. Robertson*
**MORRIS KANDINOV LLP**
Aaron T. Morris
Andrew W. Robertson
305 Broadway, 7th Floor
New York, NY 10007
(212) 431-7473

Nicolas Morgan
(*pro hac vice* pending)
**INVESTORCHOICE
ADVOCATES NETWORK**
453 S. Spring Street, Suite 400
Los Angeles, CA 90013
(310) 849-0384

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO FED. R. APP. P. 32(g)(1)

I certify that this document, Appellant's Opening Brief, complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and Local Rule 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 9,611 words, and complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point font size (except for footnotes, which are in 12-point font size) and Times New Roman type style.

Dated: June 28, 2024

*/s/ Andrew W. Robertson*
**MORRIS KANDINOV LLP**
Andrew W. Robertson
305 Broadway, 7th Floor
New York, NY 10007
(212) 431-7473

**ADDENDUM**

## ADDENDUM TABLE OF CONTENTS

15 U.S.C. § 78p ………………………………………………………..1

15 U.S.C. § 78bb …………………………………………………….7

**15 U.S.C. § 78p. Directors, officers, and principal stockholders**

**(a) Disclosures required**

**(1) Directors, officers, and principal stockholders required to file**

Every person who is directly or indirectly the beneficial owner of more than 10 percent of any class of any equity security (other than an exempted security) which is registered pursuant to section 78l of this title, or who is a director or an officer of the issuer of such security, shall file the statements required by this subsection with the Commission.

**(2) Time of filing**

The statements required by this subsection shall be filed-

(A) at the time of the registration of such security on a national securities exchange or by the effective date of a registration statement filed pursuant to section 78l(g) of this title;

(B) within 10 days after he or she becomes such beneficial owner, director, or officer, or within such shorter time as the Commission may establish by rule;

(C) if there has been a change in such ownership, or if such person shall have purchased or sold a security-based swap agreement involving such equity security, before the end of the

1

second business day following the day on which the subject transaction has been executed, or at such other time as the Commission shall establish, by rule, in any case in which the Commission determines that such 2-day period is not feasible.

**(3) Contents of statements**

A statement filed-

(A) under subparagraph (A) or (B) of paragraph (2) shall contain a statement of the amount of all equity securities of such issuer of which the filing person is the beneficial owner; and

(B) under subparagraph (C) of such paragraph shall indicate ownership by the filing person at the date of filing, any such changes in such ownership, and such purchases and sales of the security-based swap agreements or security-based swaps as have occurred since the most recent such filing under such subparagraph.

**(4) Electronic filing and availability**

Beginning not later than 1 year after July 30, 2002-

(A) a statement filed under subparagraph (C) of paragraph (2) shall be filed electronically;

(B) the Commission shall provide each such statement on a publicly accessible Internet site not later than the end of the business day following that filing; and

(C) the issuer (if the issuer maintains a corporate website) shall provide that statement on that corporate website, not later than the end of the business day following that filing.

**(b) Profits from purchase and sale of security within six months**

For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months. Suit to recover such profit may be instituted at law or

3

in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security or security-based swap agreement or a security-based swap involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.

**(c) Conditions for sale of security by beneficial owner, director, or officer**

It shall be unlawful for any such beneficial owner, director, or officer, directly or indirectly, to sell any equity security of such issuer (other than an exempted security), if the person selling the security or his principal (1) does not own the security sold, or (2) if owning the security, does not deliver it against such sale within twenty days thereafter, or does not within five days after such sale deposit it in the mails or other usual channels of transportation; but no person shall be deemed to have violated this

4

subsection if he proves that notwithstanding the exercise of good faith he was unable to make such delivery or deposit within such time, or that to do so would cause undue inconvenience or expense.

**(d) Securities held in investment account, transactions in ordinary course of business, and establishment of primary or secondary market**

The provisions of subsection (b) of this section shall not apply to any purchase and sale, or sale and purchase, and the provisions of subsection (c) of this section shall not apply to any sale, of an equity security not then or theretofore held by him in an investment account, by a dealer in the ordinary course of his business and incident to the establishment or maintenance by him of a primary or secondary market (otherwise than on a national securities exchange or an exchange exempted from registration under section 78e of this title) for such security. The Commission may, by such rules and regulations as it deems necessary or appropriate in the public interest, define and prescribe terms and conditions with respect to securities held in an investment account and transactions made in the ordinary course of business and incident to the establishment or maintenance of a primary or secondary market.

**(e) Application of section to foreign or domestic arbitrage transactions**

The provisions of this section shall not apply to foreign or domestic arbitrage transactions unless made in contravention of such rules and regulations as the Commission may adopt in order to carry out the purposes of this section.

**(f) Treatment of transactions in security futures products**

The provisions of this section shall apply to ownership of and transactions in security futures products.

**(g) Limitation on Commission authority**

The authority of the Commission under this section with respect to security-based swap agreements shall be subject to the restrictions and limitations of section 78c–1(b) of this title.

6

**15 U.S.C. § 78bb. Effect on existing law**

**(a) Limitation on judgments**

**(1) In general**

No person permitted to maintain a suit for damages under the provisions of this chapter shall recover, through satisfaction of judgment in 1 or more actions, a total amount in excess of the actual damages to that person on account of the act complained of. Except as otherwise specifically provided in this chapter, nothing in this chapter shall affect the jurisdiction of the securities commission (or any agency or officer performing like functions) of any State over any security or any person insofar as it does not conflict with the provisions of this chapter or the rules and regulations under this chapter.

**(2) Rule of construction**

Except as provided in subsection (f), the rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity.

**(3) State bucket shop laws**

No State law which prohibits or regulates the making or promoting of wagering or gaming contracts, or the operation of "bucket shops" or other similar or related activities, shall invalidate-

> (A) any put, call, straddle, option, privilege, or other security subject to this chapter (except any security that has a pari-mutuel payout or otherwise is determined by the Commission, acting by rule, regulation, or order, to be appropriately subject to such laws), or apply to any activity which is incidental or related to the offer, purchase, sale, exercise, settlement, or closeout of any such security;
>
> (B) any security-based swap between eligible contract participants; or
>
> (C) any security-based swap effected on a national securities exchange registered pursuant to section 78f(b) of this title.

**(4) Other State provisions**

No provision of State law regarding the offer, sale, or distribution of securities shall apply to any transaction in a security-based swap or a security futures product, except that this paragraph may not be construed as limiting any State antifraud law of general applicability.

8

A security-based swap may not be regulated as an insurance contract under any provision of State law.

**(b) Modification of disciplinary procedures**

Nothing in this chapter shall be construed to modify existing law with regard to the binding effect (1) on any member of or participant in any self-regulatory organization of any action taken by the authorities of such organization to settle disputes between its members or participants, (2) on any municipal securities dealer or municipal securities broker of any action taken pursuant to a procedure established by the Municipal Securities Rulemaking Board to settle disputes between municipal securities dealers and municipal securities brokers, or (3) of any action described in paragraph (1) or (2) on any person who has agreed to be bound thereby.

**(c) Continuing validity of disciplinary sanctions**

The stay, setting aside, or modification pursuant to section 78s(e) of this title of any disciplinary sanction imposed by a self-regulatory organization on a member thereof, person associated with a member, or participant therein, shall not affect the validity or force of any action taken as a result of such sanction by the self-regulatory organization prior to such stay, setting aside, or modification: Provided, That such action is not inconsistent with the provisions of this chapter or the rules or regulations thereunder. The rights of

9

any person acting in good faith which arise out of any such action shall not be affected in any way by such stay, setting aside, or modification.

**(d) Physical location of facilities of registered clearing agencies or registered transfer agents not to subject changes in beneficial or record ownership of securities to State or local taxes**

No State or political subdivision thereof shall impose any tax on any change in beneficial or record ownership of securities effected through the facilities of a registered clearing agency or registered transfer agent or any nominee thereof or custodian therefor or upon the delivery or transfer of securities to or through or receipt from such agency or agent or any nominee thereof or custodian therefor, unless such change in beneficial or record ownership or such transfer or delivery or receipt would otherwise be taxable by such State or political subdivision if the facilities of such registered clearing agency, registered transfer agent, or any nominee thereof or custodian therefor were not physically located in the taxing State or political subdivision. No State or political subdivision thereof shall impose any tax on securities which are deposited in or retained by a registered clearing agency, registered transfer agent, or any nominee thereof or custodian therefor, unless such securities would otherwise be taxable by such State or political subdivision if the facilities of such registered clearing agency, registered transfer agent, or any

10

nominee thereof or custodian therefor were not physically located in the taxing State or political subdivision.

**(e) Exchange, broker, and dealer commissions; brokerage and research services**

(1) No person using the mails, or any means or instrumentality of interstate commerce, in the exercise of investment discretion with respect to an account shall be deemed to have acted unlawfully or to have breached a fiduciary duty under State or Federal law unless expressly provided to the contrary by a law enacted by the Congress or any State subsequent to June 4, 1975, solely by reason of his having caused the account to pay a member of an exchange, broker, or dealer an amount of commission for effecting a securities transaction in excess of the amount of commission another member of an exchange, broker, or dealer would have charged for effecting that transaction, if such person determined in good faith that such amount of commission was reasonable in relation to the value of the brokerage and research services provided by such member, broker, or dealer, viewed in terms of either that particular transaction or his overall responsibilities with respect to the accounts as to which he exercises investment discretion. This subsection is exclusive and

11

plenary insofar as conduct is covered by the foregoing, unless otherwise expressly provided by contract: Provided, however, That nothing in this subsection shall be construed to impair or limit the power of the Commission under any other provision of this chapter or otherwise.

(2) A person exercising investment discretion with respect to an account shall make such disclosure of his policies and practices with respect to commissions that will be paid for effecting securities transactions, at such times and in such manner, as the appropriate regulatory agency, by rule, may prescribe as necessary or appropriate in the public interest or for the protection of investors.

(3) For purposes of this subsection a person provides brokerage and research services insofar as he-

> (A) furnishes advice, either directly or through publications or writings, as to the value of securities, the advisability of investing in, purchasing, or selling securities, and the availability of securities or purchasers or sellers of securities;

> (B) furnishes analyses and reports concerning issuers, industries, securities, economic factors and trends, portfolio strategy, and the performance of accounts; or

12

(C) effects securities transactions and performs functions incidental thereto (such as clearance, settlement, and custody) or required in connection therewith by rules of the Commission or a self-regulatory organization of which such person is a member or person associated with a member or in which such person is a participant.

(4) The provisions of this subsection shall not apply with regard to securities that are security futures products.

**(f) Limitations on remedies**

**(1) Class action limitations**

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging-

(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

**(2) Removal of covered class actions**

Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

**(3) Preservation of certain actions**

### (A) Actions under State law of State of incorporation

#### (i) Actions preserved

Notwithstanding paragraph (1) or (2), a covered class action described in clause (ii) of this subparagraph that is based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) or organized (in the case of any other entity) may be maintained in a State or Federal court by a private party.

#### (ii) Permissible actions

A covered class action is described in this clause if it involves-

14

(I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or

(II) any recommendation, position, or other communication with respect to the sale of securities of an issuer that-

(aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and

(bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

**(B) State actions**

**(i) In general**

Notwithstanding any other provision of this subsection, nothing in this subsection may be construed to preclude a State or political subdivision thereof or a State pension plan from bringing an action involving a covered security

15

on its own behalf, or as a member of a class comprised solely of other States, political subdivisions, or State pension plans that are named plaintiffs, and that have authorized participation, in such action.

**(ii) State pension plan defined**

For purposes of this subparagraph, the term "State pension plan" means a pension plan established and maintained for its employees by the government of a State or political subdivision thereof, or by any agency or instrumentality thereof.

**(C) Actions under contractual agreements between issuers and indenture trustees**

Notwithstanding paragraph (1) or (2), a covered class action that seeks to enforce a contractual agreement between an issuer and an indenture trustee may be maintained in a State or Federal court by a party to the agreement or a successor to such party.

**(D) Remand of removed actions**

In an action that has been removed from a State court pursuant to paragraph (2), if the Federal court determines that the action

16

may be maintained in State court pursuant to this subsection, the Federal court shall remand such action to such State court.

**(4) Preservation of State jurisdiction**

The securities commission (or any agency or office performing like functions) of any State shall retain jurisdiction under the laws of such State to investigate and bring enforcement actions.

**(5) Definitions**

For purposes of this subsection, the following definitions shall apply:

**(A) Affiliate of the issuer**

The term "affiliate of the issuer" means a person that directly or indirectly, through one or more intermediaries, controls or is controlled by or is under common control with, the issuer.

**(B) Covered class action**

The term "covered class action" means-

(i) any single lawsuit in which-

(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an

17

alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or

(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which-

(I) damages are sought on behalf of more than 50 persons; and

(II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

**(C) Exception for derivative actions**

Notwithstanding subparagraph (B), the term "covered class

18

action" does not include an exclusively derivative action brought by one or more shareholders on behalf of a corporation.

**(D) Counting of certain class members**

For purposes of this paragraph, a corporation, investment company, pension plan, partnership, or other entity, shall be treated as one person or prospective class member, but only if the entity is not established for the purpose of participating in the action.

**(E) Covered security**

The term "covered security" means a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 18(b) of the Securities Act of 1933 [15 U.S.C. 77r(b)], at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred, except that such term shall not include any debt security that is exempt from registration under the Securities Act of 1933 [15 U.S.C. 77a et seq.] pursuant to rules issued by the Commission under section 4(2) 1 of that Act [15 U.S.C. 77d(a)(2)].

19

**(F) Rule of construction**

Nothing in this paragraph shall be construed to affect the discretion of a State court in determining whether actions filed in such court should be joined, consolidated, or otherwise allowed to proceed as a single action.